EB Bedford, LLC, Brooklyn Four Roses, LLC, Halperne, LLC and LFJB Realty, LLC, Respondents,
against
Dorothy Lee, Appellant, Samarr Lee, "John Doe" and "Jane Doe," Occupants.




Charles H. Small, Esq., for appellant.
Belkin, Burden, Wenig & Goldman, LLP (Magda L. Cruz, Joseph Burden and Christina Simanca-Proctor of counsel), for respondents.

Appeal from a final judgment of the Civil Court of the City of New York, Kings County (Cheryl J. Gonzales, J.), entered May 12, 2017. The final judgment, after a nonjury trial, awarded possession to landlords in a licensee summary proceeding.




ORDERED that the final judgment is reversed, without costs, and the matter is remitted to the Civil Court for a new trial in accordance with this decision and order. 
Landlords commenced this licensee summary proceeding (see RPAPL 713 [7]) to recover possession of a rent-stabilized apartment on the ground that occupants' license to reside in the premises had expired upon the death of the tenant of record, Johnsie Lee. Dorothy Lee (occupant), Johnsie Lee's daughter, appeared and asserted her right to succeed to the tenancy (see Rent Stabilization Code [9 NYCRR] [RSC] § 2523.5 [b] [1]).
At a nonjury trial, the proof established that occupant had moved into the premises in 1988, where her mother and a sibling already lived. After a series of falls, Johnsie Lee was hospitalized in June 2007, and then was moved to a nursing and rehabilitation center (the center), [*2]where she remained until her death on May 7, 2013. While Johnsie Lee was a resident of the center, she continued to pay rent to landlords and signed three two-year renewal leases. Occupant testified that landlords would not accept rent from anyone other than Johnsie Lee and that she had asked her mother to sign the renewal leases so that her mother would have a home to return to when she was rehabilitated enough to do so. Neither occupant nor Johnsie Lee requested that occupant be added to the lease, but landlords were aware that occupant was living in the premises. 
After the trial, the Civil Court awarded landlords a final judgment of possession, finding, based on the Appellate Division, First Department, decision in Third Lenox Terrace Assoc. v Edwards (91 AD3d 532 [2012]), that occupant had failed to show that she had resided with Johnsie Lee for the two years prior to her mother's permanent departure from the premises in 2013, as the execution of the renewal leases prevented a finding that Johnsie Lee had permanently vacated the apartment any time prior to her death in May 2013. 
On this appeal, landlords argue that the Appellate Division, First Department, decision in Third Lenox Terrace Assoc. is squarely on point. In that case, the tenant of record had resided in the apartment starting in 1995 for approximately three years before she vacated, but the tenant continued to pay the rent and sign all of the renewal leases through 2005 while her sister resided in the premises. The tenant and her sister "affirmatively misrepresented the fact that tenant no longer resided in the apartment for more than eight years and, by necessity, unduly prejudiced landlord in the prosecution of its eviction claim" (Third Lenox Terrace Assoc. v Edwards, 23 Misc 3d 126[A], 2009 NY Slip Op 50525[U], *2 [App Term, 1st Dept 2009], affd 91 AD3d 532). Under those circumstances, the Appellate Division, First Department, held that the tenant could not have been found to have vacated prior to the expiration of the last lease on November 20, 2005; that the relevant co-occupancy period was 2003-2005; and that there was no co-occupancy during that period because the tenant had resided elsewhere.
However, in Matter of Jourdain v New York State Div. of Hous. & Community Renewal (159 AD3d 41, 45 [2018]), the Appellate Division, Second Department, reached a contrary result. Noting that "[r]egulations providing for succession rights serve the important remedial purpose of preventing dislocation of long-term residents due to the vacatur of the head of household" and that the "regulation should be liberally construed to carry out the reform intended and spread its beneficial effects as widely as possible" (internal quotation marks omitted), the Court expressly disagreed with the holding of Third Lenox Terrace Assoc. and held:
"[W]e conclude that, in promulgating Rent Stabilization Code § 2523.5 (b) (1), the DHCR intended the 'permanent vacating of the housing accommodation by the tenant' to mean the time that the tenant permanently ceased residing at the housing accommodation, and that the mere execution of a renewal lease and the continuation of rent payments by the tenant after the tenant permanently ceases to reside at the housing accommodation does not extend the relevant time period. Thus, the relevant one- or two-year period (depending on whether or not the family member is a senior citizen or disabled) in which [*3]the family member must 'reside with' the tenant is the one- or two-year period immediately prior to when the tenant ceases residing at the housing accommodation" (Matter of Jourdain, 159 AD3d at 46-47).
Applying, as we must, the holding of Matter of Jourdain, the relevant co-occupancy two-year period here began two years before Johnsie Lee's permanent removal from the premises, which was no later than June 2007. 
We note, in any event, that the facts here are distinguishable from those in Third Lenox Terrace Assoc. Here, Johnsie Lee was residing in a rehabilitation and nursing home, not a new apartment, and, according to occupant, intended to return to the premises. As admittance to a nursing and rehabilitation center may or may not be permanent, it is only in hindsight that it can be known whether a tenant's health would improve enough for her to be able to return to her home. The uncertainty of the situation may in many cases make it impossible to identify a precise permanent vacatur date unless the tenant has died in the interim (see Elk 300 E 83 LLC v Dowd, 52 Misc 3d 131[A], 2016 NY Slip Op 50976[U] [App Term, 1st Dept 2016]; 90 Elizabeth Apt. LLC v Eng, 58 Misc 3d 300 [Civ Ct, NY County 2017]). Here, landlords admit, in a supplemental brief, that "there was no evidence of fraudulent or deceptive conduct on the part of [occupant]" (see BPP ST Owner LLC v Nichols, 63 Misc 3d 18, 21 [App Term, 1st Dept 2019] [finding that the occupant was entitled to succession and that there was no prejudice to the landlord where the tenant of record had moved out, but continued to sign renewal leases and pay rent, in part because "it is clear that respondent would have been entitled to succession if he had sought it immediately after his mother moved, and neither tenant nor respondent had anything to gain by representing that tenant was still residing there"]).
In view of the foregoing, the relevant two-year period is the two years immediately prior to Johnsie Lee's permanent departure from the premises, which was no later than June 2007 (Matter of Jourdain, 159 AD3d at 46-47). Since, based on the law in effect at the time of trial, the focus at trial was incorrectly centered on the two-year period prior to Johnsie Lee's death in 2013, the matter must be remitted for a new trial limited to the issues of when Johnsie Lee permanently vacated the premises and whether occupant is entitled to succession rights based on a co-occupancy with her mother during the two-year period prior to her mother's permanent departure. 
Accordingly, the final judgment is reversed and the matter is remitted to the Civil Court for a new trial in accordance with this decision and order.
PESCE, P.J., ALIOTTA and ELLIOT, JJ., concur.

ENTER:
Paul Kenny
Chief Clerk
Decision Date: May 24, 2019